713 A.2d 583

MARY WHITE, PLAINTIFF, v. ROBERT WHITE, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Sussex County

Decided March 19, 1998.

*Mary White, pro se.*

*Roger Serruto,* for Laura White and Brian White.

GRAVES, J.S.C.

A dual judgment of divorce was entered on June 15, 1995 dissolving the marriage between the parties. This is a post-judgment application to intervene by two children, ages 18 and 25. Both children seek to intervene in order to pursue claims against their mother, Mary White, for child support and college expenses. For the reasons that follow, the request to intervene by the 18 year old daughter, Laura White, is denied. The request to intervene by the 25 year old son, Brian, is granted; however, his request for an order compelling his mother to pay him child support and/or to contribute to his college expenses is denied.

## FACTUAL BACKGROUND

Mr. and Mrs. White were married for more than 29 years prior to their divorce. They have two children: Brian was born on August 2, 1972 and Laura was born on November 19, 1979. In a written decision dated May 10, 1995, the trial judge noted that "Brian is now 22 years old and emancipated." The judgment of divorce provides that the parties are to have joint legal custody of Laura with Mr. White being the custodial parent. Mrs. White was ordered to pay child support in the amount of $75.00 per week. With respect to Laura's college expenses, Mr. and Mrs. White are required to contribute "in proportion to their income."

## LAURA'S APPLICATION

Laura has certified that she is now a full-time student at Cedar Crest College in Allentown, Pennsylvania and that tuition for the 1997–1998 school year is $10,963.00 per semester. Fortunately, Laura receives a financial aid award in the amount of $7,062.50 per semester. Laura acknowledges that her mother has "expressed an interest in helping me financially" and that she has promised to deposit money into a bank account at college for Laura's benefit. Even though there has been no showing that

Mrs. White is unwilling or unable to carry out her promises, Laura seeks a court order that will require her mother "to pay me child support or some other alternative pay schedule" while she attends college. Furthermore, Laura has asked the court "to order my mother to produce the appropriate financial information so the court may determine what child support should be paid to me directly on a weekly basis throughout my college years so that I may obtain my education at Cedar Crest College."

In her reply certification, Mrs. White indicates that she has an excellent relationship with her daughter and that Laura was "badgered" into signing her certification by "my former spouse and his lawyer." According to Mrs. White, she is currently paying child support in the amount of $75.00 per week, pursuant to the judgment of divorce, as well as her fair share of Laura's college expenses.

Whether or not Laura should be allowed to intervene is governed by *Rules* 4:33–1 through 4:33–3. Laura contends that since she has an interest in obtaining child support and financial assistance for college, she should be allowed to intervene. *Rule* 4:33–1, reads as follows:

Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Where intervention of right is not allowed, one may obtain permissive intervention under *Rule* 4:33–2:

Upon timely application anyone may be permitted to intervene in an action if his claim or defense and the main action have a question of law and fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Permission to intervene should be liberally construed in appropriate cases. *Atlantic Employers v. Tots and Toddlers,* 239 *N.J.Super.* 276, 280, 571 *A.*2d 300 (App.Div.1990), *certif. den.* 122 *N.J.* 147, 584 *A.*2d 218 (1990). Nevertheless, intervention should be denied if the applicant's interests are adequately represented by existing parties and/or intervention will prejudice the rights of

one of the original parties. This is the case with respect to Laura's application. The judgment of divorce resolved the very issues that Laura now seeks to revisit. Naturally, if circumstances change, the court may re-examine the issues of child support and college expenses; however, Laura has not claimed that the determinations set forth in the judgment of divorce are inequitable or unfair because of changed circumstances.

In *Johnson v. Bradbury,* 233 *N.J.Super.* 129, 136, 558 *A.*2d 61 (App.Div.1989) the court held that the right to seek or enforce a parental obligation for college expenses "is enforceable not only at the instance of a custodial parent against a non-custodial parent, but at the child's instance as well." As the custodial parent, Mr. White is able to seek a court review of Mrs. White's parental obligations if changed circumstances warrant such a review. The court concludes there is no present need or purpose for Laura to intervene and "so unseemly a course should be avoided whenever possible." *Martinetti v. Hickman,* 261 *N.J.Super.* 508, 513, 619 *A.*2d 599 (App.Div.1993). Accordingly, Laura's application is denied.

## *BRIAN'S APPLICATION*

Brian graduated from high school in June of 1990 and enrolled at Seton Hall University that fall. Brian explained in his certification that "Due to my immaturity, I was unable to produce grades that were acceptable to my parents and subsequently disenrolled. It was agreed, between my parents and I, that I would spend a year at a less expensive college to bring up my grades and also to prove to my parents and myself that I had the initiative to attend a four-year college on my own." In the summer and fall of 1991, Brian attended the County College of Morris. In October of 1991, Brian's mother obtained a temporary domestic violence restraining order that barred him from the marital home. The domestic violence order was eventually dismissed; however, according to Brian, his parent's divorce, and the resulting disruption and emotional distress, had a negative impact

on his ability to obtain passing grades. Since it was too late for him to withdraw, he failed all of his classes at Morris County Community College in the fall of 1991. For the next several months, until he enrolled in the Navy in the summer of 1992, Brian lived on his own and he did "odd jobs to support myself."

In the summer of 1992, Brian enrolled in the Navy and served until he was honorably discharged in the summer of 1996. In the fall of 1996, Brian returned to Morris County College as a full-time student to obtain an associates degree in biology. During the fall of 1996 and spring of 1997, Brian demonstrated his scholastic aptitude by attaining mostly "A's." He was included on the Deans List in the spring of 1997. Thus, despite his initial lack of success, first at Seton Hall University and then at Morris County Community College, it now appears that Brian has the necessary motivation and academic ability to successfully complete college. Brian has indicated that he intends "to apply to Rutger's University for the fall 1998 semester while finishing my Associates Degree at Morris County College."

Brian has certified that his tuition costs are approximately $5,000.00 per year at Morris County College. This does not include the cost of his books, room and board or commuting expenses. To assist him in obtaining a college education, Brian has requested that "The court declare me unemancipated and order the plaintiff to pay child support to me on a weekly basis to be determined by the court." Brian has not provided any information pertaining to his training and work experiences while in the Navy or the availability of financial assistance as a result of his military service. Moreover, Brian has not filed a Case information statement or provided any information regarding his assets, income or ability to obtain employment during the summer or on a part-time basis while attending college. Nevertheless, as part of his notice of motion, Brian seeks an order that will require his mother "to produce the appropriate financial information to determine child support payments by her to me to help facilitate my education."

In her reply certification, Mrs. White indicates that "Brian has spent four years in the Navy and was given an honorable discharge. He is using the GI bill to finance his present education at County College of Morris." Mrs. White also certifies that her son has chosen to take sides in the divorce and that the only reason for the application "to become unemancipated is because he is in agreement with his father to stick another pin in me." According to the plaintiff, if Brian is not able to provide for his own needs after four years in the Navy "then our government is doing something terribly wrong."

At the time of the divorce trial in 1995, Brian was on active service in the United States Navy and, unlike his sister, he was deemed emancipated. Since Brian now seeks a court order declaring that he is unemancipated, he has the burden of proving that he is entitled to the relief he requests. In view of Brian's legal status, his father, Mr. White, is not authorized to act on his behalf. Therefore, Brian's request to intervene so that he may independently pursue his claims is granted.

There is no doubt that from 1992 through 1996 Brian was emancipated. *Slep v. Slep,* 43 *N.J.Super.* 538, 543, 129 *A.*2d 317 (Ch.Div.1957). While serving in the Navy, Brian moved beyond the sphere of influence and responsibility exercised by a parent and obtained an independent, self-supporting status of his own. *Bishop v. Bishop,* 287 *N.J.Super.* 593, 598, 671 *A.*2d 644 (Ch.Div. 1995). In fact, Brian was probably emancipated sometime in 1991 after he discontinued his studies at Seton Hall University and Morris County Community College. Nevertheless, Brian has recently demonstrated an ability to successfully pursue a college education. Such perseverance is to be commended and encouraged. As noted by the court in *Sakovits v. Sakovits,* 178 *N.J.Super.* 623, 631, 429 *A.*2d 1091 (Ch.Div.1981), "a brief hiatus between high school and college is becoming common place." While the period from 1991 until now undoubtedly represents more than a "brief hiatus", the court is satisfied that the present application

should not automatically be barred because Brian was previously emancipated.

As a result of his military service, Brian is now eligible to receive educational assistance benefits pursuant to 38 *U.S.C.A.* § 3001 to § 3036. The stated purpose of the All–Volunteer Force Educational Assistance Program is to extend the benefits of a higher education to members of the armed forces and to restore educational opportunities to servicemen and women. Clearly, it would be contrary to public policy if the availability of veteran's benefits in any way impeded, diminished or jeopardized Brian's right to pursue his present claim.

Whether or not Brian is ultimately entitled to receive parental financial assistance will require an equitable analysis including consideration of the guidelines enumerated in *Newburgh v. Arrigo,* 88 *N.J.* 529, 443 *A.*2d 1031 (1982). Hopefully, Brian was able to accumulate some savings while serving in the Navy. Furthermore, as a veteran, he is eligible to receive financial assistance and he may also be eligible for scholarships, grants, loans or other financial aid. In addition, Brian's military training and his employment experiences and opportunities are relevant to his ability to contribute to necessary expenses. Brian's living arrangement will also have a significant impact on his monthly expenses and need for assistance. To date, none of this necessary information has been provided.

Brian's present request for financial assistance, after being deemed emancipated, is analogous to a change of circumstances application contemplated by *Lepis v. Lepis,* 83 *N.J.* 139, 416 *A.*2d 45 (1980). To fairly evaluate his need for financial assistance, Brian must file a current case information statement pursuant to *Rule* 5:5–4(a) and he must disclose all relevant information pertaining to his own ability to meet his financial needs. Before Mrs. White will be court ordered to provide discovery, Brian must demonstrate a prima facie need. *Lepis* at 158, 416 *A.*2d 45. Because Brian has failed to provide sufficient information, he has failed to meet his threshold burden and he has failed to demon-

strate the need for reciprocal discovery. *Stamberg v. Stamberg,* 302 *N.J.Super.* 35, 694 *A.*2d 592 (App.Div.1997).

## CONCLUSION

It has been reported that Crito said to Socrates "No man should bring children into this world who is unwilling to persevere to the end in their nurture and education." *Daly v. Daly,* 21 *N.J.* 599, 604, 123 *A.*2d 3 (1956). The modern view, as reflected in *N.J.S.A.* 9:2–4, is that both parents equally share the rights and responsibilities of child rearing. Furthermore, our legislature has determined that a parent's obligation to provide a child with a proper education is subject to reasonable limitations. *N.J.S.A.* 2A:34–23 authorizes court intervention to resolve sensitive family disputes so long as court orders are "fit, reasonable and just," given the circumstances of the parties and the nature of the case.

A review of the equitable considerations set forth in *Newburgh v. Arrigo, supra,* and expanded in *Weitzman v. Weitzman,* 228 *N.J.Super.* 346, 358, 549 *A.*2d 888 (App.Div.1988), *certif. den.* 114 *N.J.* 505, 555 *A.*2d 623 (1989), will be necessary for a decision on the merits. When there is a gap or hiatus in a child's formal education, courts need to apply a reasonable limitation so that parents are not subject to "an unreasonable open-ended burden". *Sakovits* at 632, 429 *A.*2d 1091. Nevertheless, as pointed out by Judge Kraft in *Baldino v. Baldino,* 241 *N.J.Super.* 414, 417, 575 *A.*2d 66 (Ch.Div.1990), "Today, it is not unusual for a parent to support a child through his or her 20's in order for all avenues of higher education to be explored." Without additional information from Brian to establish his need for parental assistance, the requested relief is not warranted. Brian is free to renew his motion supported by full disclosure. *Stamberg* at 41, 694 *A.*2d 592.